The Honorable Christopher M. Alston
Chapter 7
Hearing: July 27, 2018 at 9:30 am
Response Date: July 20, 2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| In re: | No. 15-16110 |
|---|---|
| BRUCE BORJESSON <br><br> DEBTOR | RESPONSE TO MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY AND MOTION TO COMPEL DEBTOR TO SURRENDER AND VACATE REAL PROPERTY |

COMES NOW the Debtor, Bruce Borjesson, by and through his attorneys of record, Vortman & Feinstein, PS, and responds as follows to the Trustee's Motions for Order Approving Sale of Real Property and to Compel Debtor to Surrender and Vacate Real Property:

**I.  The Debtor's Health Mandates Additional Time to Vacate the House.**

The Debtor, Bruce Borjesson, is 69 years old. The Debtor has resided at 9519 Fourth Ave NW, Seattle, WA 98117, for the last 32 years. He acquired the property upon the death of the previous owner, Major James J. Harris, whom he cared for in his final days. As a testament to their friendship, Major Harris left the Debtor the property in his will. Over 32 years, the Debtor has acquired a significant amount of items; few have monetary value, quite a lot has sentimental value. The Debtor began packing when he received the Trustee's Motion to Sell. That the home was under contract came as a complete surprise. The Trustee has had an offer since March 16, 2018. At no point did the Trustee nor any of his

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 1 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 1 of 12

representatives mention that an offer had been accepted. Had the Debtor been informed in March that the house was under contract, he could have begun locating alternative housing immediately. He would very likely have vacated the property by now. However, the situation is extremely complicated given the short amount of time the Trustee has given the Debtor – less than three days after the hearing on the sale Motion.

The Debtor had a hip replacement on March 9, 2018. The surgery corrected twenty years of pain. The Debtor is on Medicare and only recently has his condition deteriorated to the point where they would cover the surgery. In-patient rehabilitation was not required, however. He has been rehabilitating at home. Though his mobility is greatly improved and he no longer has to walk with a cane or walker, he is not capable of doing the physical movements to be able to move himself. He still has unresolved arthritis in other joints that affect his ability to move and lift as well.

The weather next week is expected to reach into the 90s. As an elderly person in poor overall health, he is at a heightened risk of heat stroke. Furthermore, he has developed a significant and troubling cough. The stress of this has exacerbated his health issues. In trying to pack what he can, he has had shortness of breath and dizzy spells already. Though he has asked friends to help, they are not twenty years old either. The Debtor's income is from his pension, which he receives once a month. He does not have the funds to pay anyone to help him.

The Debtor also lacks funds to pay first, last, and a deposit on an apartment

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.    Page 2 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 2 of 12

or rental home. The Debtor has been looking into senior communities with independent living or a graduated assisted living community that he would be able to afford. Those programs for low-income seniors have months long waiting lists. The Debtor could have applied for a spot in March and have been accepted by now. Instead, the Debtor's likelihood of finding a spot within the next week is extremely unlikely. In the meantime, the Debtor has been applying for other apartment rentals throughout the Seattle area, with the possibility of home health care assistance. When they find out that he's in bankruptcy, he becomes ineligible even though his credit score is above their acceptable threshold. He has spoken with friends and family, but none can provide even short term living assistance.

Because the Motion came out of the blue, he was unprepared financially for having to move out of his home so quickly. Requiring the Debtor to vacate the property less than three days after the hearing on the Motion to Sell is cruel. The Trustee accepted the offer in March. It took the Trustee's agents over four months to get their ducks in a row. The Debtor has requested that the Trustee postpone the sale for a short period of time to make arrangements, or in the alternative, to ask the purchaser if the Debtor can stay in the home after the sale closes (paying rent) while it is applying for permits and before demolition/construction begins. The Trustee's attorney could provide the Debtor with no assurances, though Mr. Groshong did express his sympathy for the Debtor's situation, which is appreciated. However, sympathy will not prevent the Debtor from being hospitalized for heat stroke or injury. It will not keep the Debtor from becoming

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 3 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 3 of 12

homeless, living in a shelter at best. The only outcome of requiring the Debtor to vacate the property by July 30, 2018, will be his inevitable hospitalization and/or homelessness.

## II. Due to Poor Marketing, the Purchase Price is Too Low.

Notwithstanding the Debtor's acquiescence to an eventual sale of the property, this particular sale is objectionable. While the Debtor does not dispute that the Trustee has the right to market and sell property of the estate, the Debtor objects to the terms of the Purchase and Sale Agreement attached to the Declaration of Edmund Wood as Exhibits 7 and 8. The contract calls for the purchase price of $345,000.00. The Debtor valued the property in 2015 at $500,000.00 on Schedule A. According to the Title Report (Exhibit 1, Decl. of Edmund Wood), the current tax assessed value is $574,000.00. The property was listed by Rich Kim of Lumen Brokers on behalf of the Trustee Edmund Wood for $249,950.00. The Debtor objects to the significant short sale of this property. While there are significant defects in the property that render it a "tear down," the listing price is ridiculously low.

Furthermore, there have been questionable actions on behalf of the broker in soliciting offers. First, as shown in the Zillow.com listing attached hereto as Exhibit A, the description states that "VIEWINGS WILL COORDINATED AFTER AN OFFER IS RECEIVED." This alone is highly unusual. However, it becomes more so when after the listing went live on the MLS, the Debtor received several phone calls from realtors in the area with questions regarding the property. He

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 4 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 4 of 12

directed those calls to Mr. Kim. Multiple realtors then phoned the Debtor back to say that Mr. Kim had not returned their calls or emails. The question then is whether this transaction was truly at an arm's length, or did Lumen Brokers cherry pick this extremely low offer from a friendly developer? There is also an open question as to how the realtor arrived at such a low asking price. It is also unknown to what extent the property defects were disclosed to the potential buyer. The Debtor has been fighting with King County to redevelop the property since at least 2009 to no avail.

The fact of the matter is that there is no way to know much of this information without an evidentiary hearing. What is known is that the contract price is ridiculously low and potentially leaves a great deal of money on the table for the estate. The Zestimate (or Zillow.com's estimate of value) was $565,152.00 as of July 19, 2018. Also attached as Exhibit B is a list provided by Zillow of comparable sales in the area. Those range from $525,000 to $665,000. While the Debtor's property has significant defects, it is not unreasonable to expect that if the property was marketed in an effective manner, higher offers would have been obtained. The Debtor asserts that a higher offer may still yet be obtainable. A sale for $345,000 leaves too much on the table to be acceptable.

**III. No Mortgage Liens Attach to Parcel B and its Sale is Subject to the Debtor's Homestead.**

The Debtor's homestead is comprised of two parcels, the legal descriptions of which are in the Trustee's Motion. The house sits on Parcel A, while Parcel B consists of the back lot, which currently has the Debtor's outdoor workshop and a

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

storage area. The mortgage has and currently is secured only on Parcel A (having the APN 394190-0081). Attached as Exhibit C is a true and correct copy of the original Deed of Trust secured on Parcel A only. Parcel B is "landlocked" on all sides; however, in 2009, the Debtor recorded a valid easement for ingress, egress, and utilities over Parcel A, making it accessible. The Debtor had viewed both parcels as his homestead and to that effect, he filed a Declaration of Homestead on the original petition date (October 13, 2015) with the King County Recorder's Office. Attached as Exhibit D is a true and correct copy of his Homestead Declaration. The APN listed on the Homestead Declaration corresponds to Parcel B (394190-0085), but has the address of Parcel A. There are several tax liens on Parcel B as listed in the Trustee's Title Report, and the Debtor's interest remains subject to those tax liens.

The Purchase and Sale Agreement does not specify which portion of the Agreement is allotted to Parcel A and which to Parcel B. The Debtor claimed his homestead exemption on Schedule C in 100% of the Fair Market Value, up to any applicable statutory limit, in both parcels. Accordingly, the Debtor is entitled to up to $125,000.00 as his homestead from any sale of the property. As Parcel B is not secured by a mortgage, Wilmington's approval of the short sale is pertinent only as to Parcel A. The Debtor **must** be compensated for his interest in Parcel B up to the statutory maximum.

There is no evidence before the Court of the value of Parcel B. The tax assessed value has been kept at $2,000 since Major Harris separated the lots in

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 6 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 6 of 12

1999. Accordingly, an appraisal of the land must be obtained and evidence of its value submitted. This will require time, at least 30 days for an appraiser to be hired and the report completed. The Debtor should be allowed to retain possession of both Parcels while the value dispute is resolved.

Wilmington's short sale approval as to Parcel A is $310,981.05. The carve out term provides for $20,500.00 to go to the estate from the sale. The Debtor would be entitled to whatever portion of the sale is attributable to Parcel B in its entirety. If the Trustee is able to successfully avoid the liens on Parcel A, the Debtor would be entitled to the full $125,000.00 regardless of what is apportioned to Parcel A and which to Parcel B. At the very minimum, the Purchase and Sale Agreement would need to be modified to specify apportionment of the price between the two parcels.

Alternatively, the Debtor wishes to retain possession of Parcel B. The Parcel would primarily be used for storage of the Debtor's belongings, including an old RV that the Debtor acquired post-conversion (a friend gave it to him to use in lieu of repaying a $500 loan, and title remains in the previous owner's name). The Debtor would be able to convert the RV into his domicile based upon his easement rights upon Parcel A. The RV admittedly needs a lot of work to make habitable as a permanent residence, and it is not a long-term solution given the Debtor's medical issues. However, it would provide him with a stop-gap solution to his housing crisis that could hopefully be resolved before winter.

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 7 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 7 of 12

**IV. Deficiencies in the Chain of Title Render the Mortgage Avoidable.**

Financial circumstances being what they were when he acquired the house, the Debtor entered into a mortgage with EquiFirst Corporation in 2007. In 2008, the Debtor became aware of multiple irregularities in his mortgage documents and servicing vis a vis MERS. After failing to receive adequate information from EquiFirst and its subsequent servicer Ocwen, the Debtor ceased making payments on or about October 2008. The loan was placed in default and upon Notice of Default, the balance of the Note was accelerated and became due.

Roughly in February 2009, EquiFirst Corporation collapsed. The Debtor alleges that its assets, including the Debtor's Note and Deed of Trust, were purchased by Barclay's Bank. EquiFirst ceased to exist; it had no employees capable of assigning the Note and Deed of Trust. MERS then substituted the Regional Trustee Services Corporation as Trustee on June 4, 2009, and they began foreclosure proceedings. On or about August 28, 2009, the Debtor filed his first Complaint in the King County Superior Court 09-2-32105-1, alleging deficiencies in the original mortgage and subsequent MERS transfers. An Order Postponing the Trustee's Sale was entered on December 11, 2009. The Debtor voluntarily dismissed the suit in April 2010.

SABR Mortgage allegedly acquired the Note and Deed of Trust on or about April 16, 2012 from MERS. It began a judicial foreclosure against the Debtor on September 26, 2014, in King County Superior Court under Case # 14-2-26804-1.

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 8 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 8 of 12

An Order Granting Summary Judgment was entered against the Debtor on October 2, 2015. On October 30, 2015, the Debtor filed his Notice of Appeal of the Order Granting Summary Judgment. The Commissioner Mary Neel of the Court of Appeals of the State of Washington (Case #74214-1-I) determined that the Notice of Appeal was premature as no final judgment had been entered.

Meanwhile, the Debtor filed his bankruptcy petition on October 13, 2015. The mortgage was listed as Disputed on Schedule D but was roughly $723,335.00 at the time of filing. No Proof of Claim has ever been filed in these proceedings. Although at the time of filing SABR Mortgage attested to ownership and possession of the Note in the prior Superior Court proceedings, at some time after the filing of the bankruptcy, ownership was passed to Carrington Mortgage. It is unknown when this occurred.

On April 27, 2018, Chris Lechtanski, AVP of Default for Carrington Mortgage, filed with King County an Affidavit of Missing Assignment, asserting that Carrington is the Current Mortgagee/Beneficiary, that there is at least one assignment between SABR and Carrington (and perhaps others within this gap) that do not appear within the public record, that such missing assignment(s) were "never completed or, if completed, were lost, misplaced or destroyed before the same could be placed of record", and that "such missing assignment(s) cannot now be obtained." The document further asserts that the Carrington has not further assigned or transferred their interest to another party. A true and correct copy of the Affidavit is attached as Exhibit E. The Affidavit was filed at 10:29 a.m. The

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 9 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 9 of 12

Affidavit was allegedly signed on March 7, 2018.

Subsequent to this Affidavit, Kristopher Sandberg, Vice President of Carrington, signed an assignment of the Deed of Trust to Wilmington Savings Fund Society. A true and correct copy is attached as Exhibit F. This document was also filed at 10:29 a.m. The Corporate Assignment of Deed of Trust was allegedly signed on March 13, 2018. However, on February 28, 2018, Lesley Leuke filed a Motion for Relief from Stay on behalf of Wilmington Savings Fund Society. At the time of the hearing, Wilmington was unable to demonstrate that it was the lawful owner of the Note and Deed of Trust. The Debtor raised his objections as to the chain of title and was given an opportunity to address the Court at the hearing on the Motion on April 6, 2018. The Court was generous with its time in allowing this presentation and took patience in explaining that the legitimacy of the Note and Deed of Trust were not properly before the Court. The Debtor asserts that this is the time.[1]

Notwithstanding his objections to the legitimacy of the Note and Deed of Trust, Mr. Borjesson was and is committed to doing what he can to save his home from the arbitrary sale by the Trustee. Mr. Borjesson submitted his original loan modification application before the hearing on the Motion for Relief from Stay in

---

[1] No foreclosure (judicial or non-judicial) is pending at this time. The Debtor estimates that following relief from the automatic stay being granted on April 10, 2018, Wilmington has approximately 155 days remaining under the six-year statute of limitations to pursue foreclosure of its Deed of Trust. The timeline was calculated as follows:

| Start | End | Duration | |
|---|---|---|---|
| | | 2190 | 6-year SOL |
| 10/1/2008 | 8/28/2009 | -322 | 1868 |
| 4/30/2010 | 9/26/2014 | -1611 | 257 |
| 4/10/2018 | 7/20/2018 | -102 | 155 |

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 10 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 10 of 12

the bankruptcy on April 6, 2018. He and his attorneys have been corresponding through Shannon Lehmann of Aldridge Pite, LLP, having the title of Loss Mitigation Supervisor, and based out of their Atlanta office, with most email communications being cc'd to [mortgageassistance@carringtonms.com](mortgageassistance@carringtonms.com), as specified by Ms. Leuke and Ms. Lehmann. The most recent update to the package was on July 2, 2018 via email. At no time has Carrington, Wilmington, Aldridge Pite, or any representative of these entities communicated that there was a pending short sale application nor that the application had been granted in lieu of a loan modification.

The Debtor will be filing a separate declaration concurrent to this Response regarding the chain of title prior to the bankruptcy filing. The Debtor has identified several factual disputes of material fact that must be determined through either an evidentiary hearing (at a minimum) or an adversary proceeding. The Debtor's counsel has had several discussions with the attorney for the Trustee regarding the viability of an adversary proceeding. The Debtor strongly encourages the Trustee to pursue avoidance of the mortgage, which will maximize the recovery for the estate if the Court grants its Motion to sell under the existing Purchase and Sale Contract. If the Trustee files an Adversary Proceeding, the expiration of the short sale approval by Wilmington becomes moot and would be stayed pending resolution of the mortgage by the Court. The Debtor requests that he be allowed to remain in possession of the property while the Adversary is pending, with the understanding that he would continue to try to find alternative housing as soon as possible.

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 11 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 11 of 12

## V. Conclusion

Accordingly and for the reasons stated herein, the Debtor urges the Court to deny the Trustee's Motions, or in the alternative, to set an evidentiary hearing to determine the value of Parcel B and whether Wilmington's mortgage may be avoided on Parcel A, and to allow the Debtor to remain in his home while these disputes are being resolved.

Dated this 20th day of July, 2018.

/s/ Kathryn P. Scordato
Kathryn P. Scordato, WSBA #41922
Attorney for Debtor

## Declaration of Bruce Borjesson

I, Bruce Borjesson, duly sworn upon oath under penalty of perjury under the laws of the State of Washington, declare and state as follows:

The facts and assertions made within the above Response are true and correct to the best of my knowledge and belief and are incorporated herein by reference. Attached are true and correct copies of the following documents:

A. Zillow.com listing for 9519 NW, Seattle, WA 98117 as of July 19, 2018
B. Zillow.com list of Comparable Sales as of July 19, 2018
C. Deed of Trust dated August 2, 2007
D. Debtor's Homestead Declaration dated October 13, 2015
E. Affidavit of Missing Assignment dated March 7, 2018
F. Corporate Assignment of Deed of Trust dated March 13, 2018

Dated this 20th day of July, 2018.

/s/ Bruce Borjesson
Bruce Borjesson, Debtor

Response to Motion for Order Approving Sale of Real Property and Motion to Compel Debtor to Surrender and Vacate Real Property.

Page 12 of 12

VORTMAN & FEINSTEIN
2033 SIXTH AVENUE, SUITE 251
SEATTLE, WA 98121
(206) 223-9595
(206) 386-5355 (fax)

Case 15-16110-CMA    Doc 126    Filed 07/20/18    Ent. 07/20/18 15:02:02    Pg. 12 of 12